# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                 Criminal Case No.  11-20425-7

                                       Civil Case No.       11-14134

JON RYAN,

    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S
## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE AND DECLINING TO
## ISSUE CERTIFICATE OF APPEALABILITY

Defendant Jon Ryan, proceeding *pro se*, moves under 28 U.S.C. § 2255 to

vacate the 70-month sentence he received after he pled guilty to one count of

conspiracy to commit wire fraud and mail fraud, 18 U.S.C. § 1349.  For the following

reasons, the court will deny Defendant's motion.

## I.  BACKGROUND

From approximately July 2010 through June 2011, Defendant and his co-

conspirators engaged in credit-card fraud.  Defendant arranged for his co-conspirators

to obtain counterfeit credit cards and identification, using the names and account

numbers of individuals whose personal information had been stolen.  Defendant

manufactured the counterfeit credit cards and identification documents in South

Carolina, and then shipped them to Michigan using a stolen Federal Express account.

His conspirators used the cards to obtain memberships at warehouse stores (such as

Sam's Club), and purchased merchandise valued at over $1,000,000 with the cards. Defendant's co-conspirators subsequently transferred over $100,000 to Defendant's bank account in South Carolina.

As a result of these actions, a grand jury indicted Defendant for conspiracy to commit wire fraud and mail fraud, 18 U.S.C. § 1349, production, use or trafficking in counterfeit access devices, 18 U.S.C. § 1029(a)(1), using or trafficking in unauthorized access devices, 18 U.S.C. §§ 1029(a)(2), 1029(a)(5), possession of 15 or more counterfeit access devices, 18 U.S.C. § 1029(a)(3), and aggravated identity theft, 18 U.S.C. § 1028A.  Defendant, represented by counsel at the time, pleaded guilty via a Rule 11(c)(1)(B) plea agreement to conspiracy to commit wire fraud and mail fraud. The government agreed to dismiss the remaining counts, and the plea agreement recommended that Defendant receive a sentence between 51 and 63 months' imprisonment.

On April 5, 2012, the court held a plea hearing.  (Dkt. # 119, Pg. ID 429.) Defendant was placed under oath, and the court warned him of the consequences of any untruthful testimony.  (*Id.* at Pg. ID 433.)  Defendant agreed that he had been able to "easily read" the plea agreement, and that he "easily underst[oo]d" his attorney's explanations of the agreement.  (*Id.* at Pg. ID 434.)  Defendant's counsel stated that he had reviewed the plea agreement with Defendant two days before the hearing, and had spent approximately two hours reviewing the agreement with Defendant the day of the hearing.  (*Id.* at Pg. ID 435.)  Defendant agreed that he had met with his attorney, understood his advice, and that his attorney had answered all of Defendant's questions. (*Id.* at Pg. ID 436.)  Defendant also confirmed that he understood that it was his

2

decision to plead guilty, and that he committed the offense described in the plea agreement. (*Id.* at Pg. ID 437.)

Next, the court warned Defendant that by pleading guilty, he was giving up his right to a jury trial, his right to be presumed innocent, and his right to present and cross-examine witnesses. (*Id.* at Pg. ID 438–39.) Defendant acknowledged that he understood that he was giving up these rights. The court also reminded Defendant that, pursuant to the plea agreement, he was giving up his right to appeal his conviction:

> **The Court**: You are giving up the right that you would otherwise have, even in pleading guilty, to challenge your guilty plea. Believe it or not, people can admit their guilt, plead guilt and then go to the Court of Appeals and try to get it all turned around. That is a legal right that has been recognized and you're giving it up voluntarily by agreeing to this deal with the Government. Do you understand that?
>
> **The Defendant**: I understand.
>
> **The Court**: All right. So that means it is even more permanent what you're doing today. If I accept this plea, that's it. You are convicted and you're going to stay convicted. . . . Are you clear on that?
>
> **The Defendant**: Yes, I am.

(*Id.* at Pg. ID 440.) The court instructed Defendant that if it sentenced him "generally, as contemplated in the plea agreement," that he was giving up his right to appeal that sentence, "even if its more harsh than you hoped it would be." Defendant again indicated that he understood these concepts, stating that he did not have any "qualms" about his decision to plead guilty. (*Id.* at Pg. ID 441.)

After explaining the elements of the crime, and receiving confirmation from Defendant that he understood each element, the court explained the plea agreement's recommended sentence range:

3

> **The Court:**  I have a set of guideline worksheets here that [government counsel] has prepared, which perhaps [defense counsel] has agreed with or predicted that are likely correct.
>
> **[Defense Counsel]:**  We've gone over the guidelines, your Honor.  Yes.
>
> **The Court:**  You think they are likely correct?
>
> **[Defense Counsel]:**  I think there were some questions on maybe a couple of the enhancements, but I think, yes, they are basically close.

(*Id.* at Pg. ID 446.)  The court warned Defendant that if he pleaded guilty, he would be accepting the guideline calculations as set forth in the plea agreement and that the court "would not listen to you complaining about them later on at sentencing."  (*Id.* at Pg. ID 447.)  The court instructed Defendant that it would calculate a guideline range that could be higher or lower than the range recommended in the plea agreement, and that it would independently determine whether certain enhancements applied to Defendant, including the "organizer or leader" enhancement recommended by the plea agreement. (*Id.* at Pg. ID 449–50.)  As the court explained:

> **The Court**:  A recommendation is just that, it's only a recommendation.  It does not bind me.  It doesn't tie my hands.  I'm going to do a correct, fresh calculation of the sentencing guidelines.  So what you have here is at best an estimate.  It may be a very good estimate, and it might be the same as what I come up with.  But there's no guarantee that it will be.  Do you understand all that?
>
> **The Defendant**: I understand.
>
> . . .
>
> **The Court:**  [I]t certainly is possible that you could receive a sentence higher than 63 months, even if the guideline range ends at 63 months.  It is entirely conceivable you, a person in your position, could receive a sentence of 65 or 72 months, or something along those lines.  I'm just using those . . . purely as examples.  But there's nothing wrong with a sentence like that. . . . So you understand that this is a recommended range.  I'm not bound by it. . . .

4

Understood?

       **The Defendant:** Understood. Yes, sir.

(*Id.* at Pg. ID 449–51.) Government counsel summarized the plea agreement, and

again warned Defendant that, as to the plea agreement's sentencing recommendation,

"if the Court does not follow this recommendation, the defendant will have no right to

withdraw his plea of guilty." (*Id.* at Pg. ID 452.) The court again verified that Defendant

understood the plea agreement:

> **The Court:** You've had plenty of time to go over this agreement, you understand it, you want to make this agreement; is that right?
>
> **The Defendant:** Yes, I do.
>
> **The Court:** You understand that sentencing limitations are only recommendations. They are not binding on me, right?
>
> **The Defendant:** Yes, I understand.

(*Id.* at Pg. ID 455.) Defendant agreed that he was satisfied with his defense counsel's

representation, and that defense counsel had adequately prepared Defendant for the

hearing. (*Id.* at Pg. ID 457.) After reviewing the facts of Defendant's crime, the court

accepted his guilty plea. (*Id.* at Pg. ID 464.)

       On September 27, 2012, the court held a sentencing hearing for Defendant. At

the outset, the court noted that Defendant's criminal history placed him in category III,

rather than category I as contemplated by the Rule 11 plea agreement. Defense

counsel did not object to this revised calculation. (Dkt. # 113, Pg. ID 372–73.) Next, the

court recognized that Defendant objected to the four-level enhancement for being an

organizer or leader in the conspiracy, but noted its confusion given that Defendant

agreed that the enhancement applied in his plea agreement.  (*Id.* at Pg. ID 373.)  The

court reviewed the facts of the case and found that Defendant was an equal leader with

co-defendant Terrell Mason, and that both of them had organized the conspiracy and

directed the remaining co-conspirators.  (*Id.* at Pg. ID 374.)  The court concluded that

the organizer/leader enhancement should apply, and found that Defendant's sentencing

range was correctly calculated at 63–78 months' imprisonment.  (*Id.* at Pg. ID 375.)

After reviewing the nature and circumstances of Defendant's crime, the court sentenced

Defendant to 70 months' imprisonment, a sentence six months less than Mason

received.  (*Id.* at Pg. ID 387–88.)

## II.  STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the

court which imposed the sentence to vacate, set aside or correct the sentence" on the

ground "that the sentence was imposed in violation of the Constitution or laws of the

United States, or that the court was without jurisdiction to impose such sentence, or that

the sentence was in excess of the maximum authorized by law, or is otherwise subject

to collateral attack."  28 U.S.C. § 2255(a).  As "[§] 2255 is not a substitute for a direct

appeal," *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United

States v. Frady*, 456 U.S. 152, 167-68 (1982)), "a prisoner must clear a significantly

higher hurdle than would exist on direct appeal" to merit collateral relief.  *Frady*, 456

U.S. at 166.  "In order to prevail upon a § 2255 motion, the movant must allege . . . (1)

an error of constitutional magnitude, (2) a sentence imposed outside of the statutory

limits; or (3) an error of fact or law that was so fundamental as to render the entire

proceeding invalid."  *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003).  "To

6

prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–638 (1993)).  Though non-constitutional errors are generally outside the scope of § 2255 relief, *see United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a defendant can prevail on a § 2255 motion alleging non-constitutional error "by establish[ing] a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process,'" *Watson*, 165 F.3d at 488 (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)) (internal quotation marks omitted).

## III.  DISCUSSION

Defendant raises two claims in his § 2255 motion:  ineffective assistance of counsel during plea negotiations, and a variety of non-constitutional errors that he claims rendered the entire proceedings invalid.  Each claim will be addressed below.

### A.  Ineffective Assistance of Counsel

Defendant takes issue with his counsel's advice to accept the government's plea offer.  He argues that the plea agreement should not have included the four point offense-level enhancement for Defendant's conduct as an organizer/leader of the conspiracy, and that defense counsel's recommendation that Defendant accept the plea offer constituted ineffective assistance of counsel.  Defendant speculates that had defense counsel presented "the true facts of this case . . . to the government," the government would have omitted the four-level enhancement from its plea offer.  (Dkt. # 115, Pg. ID 412.)

7

A claim of ineffective assistance of counsel can be raised for the first time in a § 2255 motion. In order to succeed on his ineffective-assistance-of-counsel claim, Defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant must first show that his counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The court evaluates an attorney's performance by reference to "reasonableness under prevailing professional norms." *Id.* at 688. If Defendant succeeds in proving deficient performance, he must next show that the deficient performance was prejudicial. A defendant may establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687. Defendant must show more than "some conceivable effect on the outcome of the proceeding;" he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94. In the context of a plea bargain, Defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (citation omitted).

Defendant has not met this burden. To begin with, Defendant does not argue that, but for his attorney's ineffective assistance, there is a reasonable probability that he would have "insisted on going to trial." *Id.* Defendant instead claims that if only defense counsel had argued more vociferously against the organizer/leader enhancement, the government would have reached more favorable terms on its plea agreement with Defendant. This argument is complete speculation. The government is

8

under no obligation to offer a plea agreement to criminal defendants in the first place, and there is no indication in the record that the strength of Defendant's case would have compelled the government to offer a more lenient sentencing recommendation.  Further, Defendant's argument ignores the fact that it is ultimately the court's responsibility to determine the appropriate sentence. Indeed, after reviewing the facts of the case, the court found that Defendant acted "shoulder to shoulder" with co-defendant Mason, and that Defendant was a "co-equal" when it came to managing the criminal enterprise. (Dkt. # 113, Pg. ID 374.)

Further, the court's examination of the record reveals ample evidence that defense counsel conducted effective representation of Defendant.  By Defendant's own admission, defense counsel successfully convinced the government not to oppose bond and to allow Defendant to surrender himself, despite the fact that Defendant lived in a distant state.  (Dkt. # 155, Pg. ID 412.)  Counsel's vigorous advocacy apparently continued into plea negotiations as well, as the government represents that although Defendant was the last member of the conspiracy to be indicted, defense counsel persuaded the government to agree to a plea offer notwithstanding Defendant's incriminating statements and statements made by Defendant's co-conspirators.  (Dkt. # 121, Pg. ID 474–76.)  Indeed, pursuant to the plea agreement, the government agreed to dismiss four of the five charges against Defendant, including the charge for aggravated identity theft, which would have carried a mandatory consecutive two-year term of imprisonment.  *See* 18 U.S.C. § 1028A.  Although it may be tempting for Defendant to second-guess his counsel's performance with the benefit of distance and hindsight, the record provides no indication that defense counsel rendered ineffective

9

assistance.[1]  Defendant's claim under ground one will be denied.

### B.  Procedural Errors

Defendant alleges a variety of non-constitutional procedural errors, all of which are procedurally barred, and none of which have merit. "[N]onconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process."  *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  Indeed, "[n]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver."  *Id.*  In order to obtain relief, Defendant must show both "cause" and "actual prejudice" resulting from the errors of which he complains.  *United States v. Frady*, 456 U.S. 152, 168 (1982).  Although a successful claim of ineffective assistance of counsel may preserve review of an error that would otherwise be forfeit, as discussed *supra*, Defendant is unable to successfully demonstrate such a claim. *Grant*, 72 F.3d at 503.  Accordingly, all of Defendant's remaining arguments are procedurally barred.

Nevertheless, the court will briefly explain why each of Defendant's claims are without merit.  Defendant first argues that the court erred by accepting Defendant's guilty plea because the court was on notice that Defendant did not agree with the organizer/leader enhancement specified in the plea agreement.  However, as discussed in detail *supra*, the court warned Defendant specifically that:  (1) by pleading guilty he

---

[1]Defendant also argues that counsel was ineffective by failing "to even discuss or explore the possibilities of filing a direct appeal."  (Dkt. # 115, Pg. ID 413.)  This argument is frivolous.  Defendant knowingly waived his appellate rights as part of his plea agreement.  There was nothing for defense counsel to discuss.

would be waiving his objections to the guidelines calculation in the plea agreement
(which included the organizer/leader enhancement), and (2) that the court would not be
bound by the plea agreement, and would be free to impose whatever sentence it
determined to be just under the circumstances.  (Dkt. # 119, Pg. ID 446–51, 455–57.)
The court could not have been more careful in its colloquy with Defendant.  Despite
being given numerous opportunities to do so, Defendant did not ask any questions,
never objected, and in fact indicated multiple times that he understood the court's
instructions and agreed with the plea agreement.  In other words, his plea was knowing
and voluntary, and he cannot now complain that he did not understand the
consequences of his decision.

Defendant also attempts to reargue the applicability of the organizer/leader
enhancement on collateral review.  However, as discussed during Defendant's
sentencing hearing, the court found that Defendant was a co-leader in the criminal
conspiracy, and that Defendant "acted in concert, cooperatively, and an in an organized
fashion" with the other leader, Mason, throughout the entirety of the criminal conspiracy.
(Dkt. # 113, Pg. ID 374.)  The court further reasoned that Defendant acted as a "behind-
the-scenes general," who, although not as blatantly involved in the conspiracy as co-
defendant Mason, nevertheless organized and substantially profited from the actions of
his underlings.  (*Id.* at Pg. ID 374–75.)  The court also found that the quantity of items
subjected to criminal forfeiture "adds substance" to the determination that the
organizer/leader enhancement applied to Defendant.  "In other words, the things that
had been purchased through these fraudulent credit cards and shipped to various
places and sold through fencing and so forth wound up in [Defendant's] hands, which

[is] one of the attributes of being an organizer or leader[, that is] claiming a significant, [or] perhaps greater share of the proceeds." (*Id.* at Pg. ID 376.)  The court provided Defendant ample explanation of its findings, and Defendant's argument to the contrary is devoid of merit.

Defendant argues that the court erred by failing to issue a written determination of its factual finding regarding the organizer/leader enhancement.  *See* Fed. R. Crim. P. 32(i)(3)(C).  However, as the government notes, the court made no findings of fact that were in conflict with the presentence report, and in fact adopted the presentence report without amendment.  Further, Defendant does not allege any harm resulting from this error, which is enough to defeat his claim.  *See United States v. Lantz*, 443 F. App'x 135, 147 (6th Cir. 2011); *United States v. Gilden*, 332 F. App'x 312, 313 (6th Cir. 2009).

Lastly, Defendant argues that the court erred by failing to advise Defendant of his right to appeal his sentence.  Fed. R. Crim. P. 32(j)(1)(B).  As discussed above, Defendant knowingly waived his right to appeal as part of his plea agreement with the government.  "[W]hen a defendant waives the right to appeal his sentence in a valid plea agreement, he cannot have his sentence vacated and his case remanded for notice as to the right to appeal his sentence and for resentencing solely on the ground that the district court failed to inform him of a right that did not exist." *Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996).  Defendant's motion to vacate sentence will be denied.

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.

12

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a Defendant demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the court concludes that reasonable jurists would not debate the court's assessment of Defendant's claims.  Therefore, the court denies a certificate of appealability.

## V.  CONCLUSION

IT IS ORDERED that the "Motion to Vacate Sentence under 28 U.S.C. § 2255" (Dkt. # 115) is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED as to all of Defendant's claims.

   s/Robert H. Cleland            
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 2, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 2, 2014, by electronic and/or ordinary mail.

   s/Lisa Wagner            
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\11-20425.RYAN.DenyMotVacate.jac.wpd